IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAVIN DASS, *

Plaintiff, *

v. * CIVIL NO. JKB-26-2631

RAYMOND BLETHEN, et al., *

Defendants. *

*

* * * * * * * * * * * *

# MEMORANDUM

Pending before the Court is Defendants Raymond Blethen, Derrick Bonson[1], Yashami Vasquez, and Transdev North America, Inc.'s Partial Motion to Dismiss Plaintiff Navin Dass's Complaint. (ECF No. 7.) Defendants move the Court to dismiss all claims against the individual defendants—Blethen, Bonson, and Vasquez, employees of Defendant Transdev North America, Inc. ("Transdev")—in their individual capacities. (*Id.*) The Motion is fully briefed and no hearing is required.[2] For the following reasons, Defendants' Partial Motion to Dismiss will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Navin Dass was the general manager of the Charm City Circulator—a free transit system operating in Baltimore—from 2022 to 2024. (ECF No. 2 ¶¶ 1, 4.) He was employed by Defendant Transdev, which "operated the Charm City Circulator transportation contract on behalf of the Baltimore City Department of Transportation" ("BCDOT"). (*Id.* ¶ 5.) As general manager, Dass

---

[1] Derrick Bonson's first name was originally misspelled as "Derek" in Plaintiff's Complaint. (ECF No. 8 at 1 n.1.)

[2] Defendants requested a hearing on their Motion. (ECF No. 9.) The Court finds that the issues are adequately presented in the parties' briefing and thus no hearing is required. *See* Local Rule 105.6 (D. Md. 2025).

"was responsible for overseeing the day-to-day operation of the Charm City Circulator transportation contract . . . including operations, personnel, and the billing relationship with BCDOT." (*Id.* ¶ 10.) Dass's Complaint arises out of two workplace incidents involving his superiors at Transdev.

First, Dass alleges that, on or about December 23, 2023, he was approached by the on-site maintenance manager at Baltimore's Charm City Circulator facility and told that Defendant Bonson—Transdev's National Director of Maintenance (*id.* ¶ 7)—had instructed the on-site maintenance manager to "bill BCDOT for approximately $97,000 in bus parts and supplies." (*Id.* ¶ 18.) Dass, as general manager, refused to sign off on the billing because he believed it was "an effort by Mr. Bonson to 'right-size' Transdev's year-end inventory by transferring internal inventory costs onto the books of a municipal client through fraudulent invoicing." (*Id.* ¶¶ 19–21.) Three months later, Bonson allegedly "sent an email to [Dass] and made a threat to his continued employment." (*Id.* ¶ 35.)

Second, Dass alleges that, in March 2024, he was approached by two of his direct reports with allegations of racial discrimination and sexual harassment by Defendant Blethen, Transdev's Regional Director of Operations. (*Id.* ¶¶ 6, 24–27.) Nya Boyd, who is Black, complained to Dass that Blethen had made "racially offensive comments" to her in which he "questioned why Martin Luther King, Jr. 'needs an entire day dedicated to him' and asked 'what did he do?'" (*Id.* ¶ 25.) The other employee, Kendra Ross, complained that Blethen had sexually harassed her at a holiday party. (*Id.* ¶ 27.) Boyd and Ross submitted complaints to Transdev employees, including Defendant Vasquez—Transdev's Regional Human Resources Representative—on which Dass was copied. (*Id.* ¶ 30.)

Dass alleges that he "followed up" with Transdev counsel and compliance officers to "ensure that [Ross and Boyd's] complaints were being investigated and addressed" and "advocated" on behalf of them. (*Id.* ¶¶ 32–34.) Following Dass's communications, Vasquez visited the Baltimore facility to "conduct an investigation into the discrimination complaints" filed by Boyd and Ross. (*Id.* ¶¶ 36–38.) Dass answered questions "about the situation" and also "raised the December 2023 fraudulent billing scheme" to Vasquez and shared details about it, as well as his general prediction that he would face retaliation for his role in both incidents. (*Id.* ¶¶ 38–40.) Dass alleges that Vasquez, instead of taking the incidents seriously, supported Blethen and allowed him to commandeer an investigation into a later workplace conflict between Boyd and another employee, overturning Dass's own "prompt and thorough investigation." (*Id.* ¶¶ 41–50.)

Finally, Dass alleges that, on May 17, 2024, Blethen and Vasquez personally traveled to the Charm City Circulator facility in Baltimore and fired Dass and Boyd. (*Id.* ¶¶ 51–53.) Blethen and Vasquez allegedly told Dass that he was fired "for general performance issues." (*Id.* ¶ 55.) During his tenure, however, Dass alleges that he was a model manager who received favorable annual performance reviews and improved the Circulator's operations. (*Id.* ¶¶ 12–17.)

Dass submitted a charge with the United States Equal Employment Opportunity Commission ("EEOC") after he was fired. (*Id.* ¶ 57.) In response, Transdev told the EEOC that "Mr. Dass was terminated because he had performance issues, received a Performance Improvement Plan ('PIP'), failed to successfully complete the PIP, and was thereafter discharged." (*Id.* ¶ 60.) Dass alleges, however, that Transdev's rationale for his firing is pretextual because the PIP was a 60-day plan created by Blethen only ten days before Dass's firing, and "Transdev did not issue the PIP to Mr. Dass—at any time, in any manner, by any means." (*Id.* ¶¶ 72–74, 77.)

Dass alleges that the EEOC found that there was "reasonable cause to believe that Mr. Dass was discharged in retaliation for engaging in protected activity." (*Id.* ¶¶ 86–87.)

After receiving a Notice of Right to Sue from the EEOC, Dass filed his Complaint, which was removed to this Court. (ECF Nos. 1, 2.) The Complaint alleges four counts: (I) Retaliation in Violation of 42 U.S.C. § 1981 against Transdev, Blethen, and Vasquez; (II) Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a), against Transdev; (III) Retaliation in Violation of the Maryland Fair Employment Practices Act ("FEPA") against Transdev, Blethen, and Vasquez; and, pled in the alternative, (IV) Wrongful Discharge in Violation of Maryland Public Policy against Bonson and Vasquez. (ECF No. 2 ¶¶ 89–128.) Defendants move to dismiss the claims against the individual defendants, excluding the claims against Transdev. (ECF No. 7.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. This motion is designed "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When considering a motion to dismiss, the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

To survive dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678–79. Nor do "'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III. DISCUSSION

### A. Count I: Retaliation in Violation of 42 U.S.C. § 1981

The anti-retaliation provision of 42 U.S.C. § 1981 prohibits employers from retaliating against employees who oppose race-based discrimination. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). A prima facie case of retaliation requires a plaintiff to show "(i) that [he] engaged in protected activity, (ii) that [his employer] took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (citation omitted). Here, Defendants do not dispute that Dass has adequately pled these elements. Rather, they contend that "Dass's Complaint does not allege sufficient facts with regard to Mr. Blethen or Ms. Vasquez that would establish any basis for imposing *individual liability* on either of them under Section 1981." (ECF No. 8 at 8 (emphasis added).) The Court finds otherwise and so it will not dismiss Count I against Blethen or Vasquez.

Individual employees "can be held personally liable when they 'intentionally cause a corporation to infringe the rights secured by' section 1981." *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 483 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003) (quoting *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1146 (4th Cir. 1975)). "Similarly, supervisors are liable under § 1981 when they authorize, direct or participate in a discriminatory act," like a retaliatory firing. *Curran v. Mom's Organic Mkt., Inc.*,

Civ. No. AAQ-24-00402, 2024 WL 4955274, at *10 (D. Md. Dec. 2, 2024) (citation and internal quotation marks omitted).

The Court finds instructive the Fourth Circuit's recent holding regarding individual liability in an employee's hostile workplace environment claim against his former supervisor:

> Plaintiffs . . . must plausibly allege [the individual supervisor's] personal involvement in the hostile workplace through *his* participation in the challenged conduct, or through *his* acts or omissions that causally contributed to it. They must also plausibly allege discriminatory intent. And since Plaintiffs proceed under § 1981 principles, they additionally must satisfy causation requirements.

*Gordon v. Heath*, 179 F.4th 263, 274 (4th Cir. 2026) (emphasis original) (citations omitted). So too here: Dass must plausibly allege that Blethen and Vasquez were personally involved in his allegedly retaliatory firing and connect their conduct to a discriminatory state of mind.

Dass sufficiently alleges these elements. First, Blethen was the manager whose allegedly racist conduct Dass advocated against, and for which he was allegedly terminated, supplying a link to Blethen's potentially discriminatory state of mind. (ECF No. 2 ¶¶ 25–34.) Second, Blethen allegedly came to Baltimore to fire Dass, supplying a reason to infer that he was involved in the firing decision. (*Id.* ¶¶ 51–53.) Third, Dass alleges that Blethen created the measure (the PIP) that Transdev used to justify Dass's discharge, only ten days before that discharge. (*Id.* ¶¶ 72–76.) In sum, Dass alleges that Blethen was the supervisor whose conduct prompted the protected act, who took part in the allegedly retaliatory termination, and who drafted the document used to justify that termination. Through these facts, Dass sufficiently alleges that Blethen personally participated in the discriminatory conduct with a discriminatory state of mind.

While the allegations against Vasquez are sparser, Dass alleges enough to survive a motion to dismiss. Dass alleges that Vasquez is the human resources officer who received the report of

Blethen's allegedly racist conduct against Boyd and interviewed Dass about it, at which point Dass told her of his expectations of retaliation. (ECF No. 2 ¶¶ 36–40.) Rather than acting on the report, Vasquez supported Blethen when he personally investigated Boyd for a later workplace conflict. (*Id.* ¶¶ 48–50.) Mere weeks later, she traveled with Blethen to Baltimore to terminate Dass. (*Id.* ¶¶ 51–54.) Unlike defendants who merely knew of or failed to investigate discrimination, *see Harriston v. Target Corp.*, Civ. No. GLR-23-2795, 2024 WL 4336093, at *5 (D. Md. Sept. 25, 2024), Vasquez allegedly lent support to Blethen during Dass's termination, and did so soon after the incident with Boyd and with full knowledge of Dass's recent protected activity. At this stage, that is enough to plausibly allege her personal involvement and retaliatory intent. *See Timbers v. Telligent Masonry, LLC*, Civ. No. JKB-21-00293, 2022 WL 861849, at *7 (D. Md. Mar. 23, 2022) (finding that a plaintiff stated a claim under § 1981 for retaliatory termination where the individual defendant "recommended that [Plaintiff's] employment be terminated and drafted an Employee Disciplinary/Termination Form" soon after the plaintiff complained of racial discrimination).

Dass plausibly alleges that both Blethen and Vasquez violated his § 1981 rights by participating in discriminatory retaliation against his protected activity. Defendants' Partial Motion to Dismiss Count I as to these individual defendants will be denied.

**B. Count III: Retaliation in Violation of the Maryland FEPA**

Under Maryland's FEPA, an "employer may not discriminate or retaliate against any of its employees or applicants for employment . . . because the individual has . . . opposed any practice prohibited by [FEPA]," such as racial discrimination in the workplace. Md. Code Ann., State Gov't § 20-606(f). FEPA "is the State law analogue to the federal employment discrimination statutes," and Maryland courts "traditionally seek guidance from federal cases in interpreting [it]."

*Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021) (quoting *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)).

Defendants argue that Count III fails as to Blethen and Vasquez because the Complaint pleads no facts showing that they aided or abetted Transdev's alleged retaliation, and because there is no private right of action for aiding and abetting a FEPA violation in any event. (ECF No. 8 at 9–10; ECF No. 14 at 6–8.) Because the Court finds that Defendants' latter legal argument is correct, it need not reach the former factual one.

As an initial matter, this Court has consistently held that "[e]mployees are not liable in their individual capacities under Title VII or MFEPA because they do not qualify as 'employers' under either statute." *Hurley v. Howard Cnty. Dep't of Police*, Civ. No. CJC-25-1498, 2026 WL 864078, at *10 (D. Md. Mar. 30, 2026) (collecting cases).[3] Dass argues, however, that the plain language of another provision, Md. Code Ann., State Gov't § 20-801, authorizes civil actions against individuals who aid, abet, or otherwise participate in an unlawful employment practice. (ECF No. 13 at 10.) He relies on two unreported decisions in which the Appellate Court of Maryland construed § 20-801 to mean that "[e]ven when an individual cannot be liable for FEPA violations under a theory of direct liability, an individual may be liable under a theory of aiding and abetting." *Walters v. Chimes D.C., Inc.*, No. 253, Sept. Term, 2021, 2022 WL 17974610, at *16 (App. Ct. Md. Dec. 28, 2022); *Worthy v. Chimes D.C., Inc.*, No. 034, Sept. Term, 2021, 2022 WL 17974613, at *16 (App. Ct. Md. Dec. 28, 2022).

[3] Dass also argues that Blethen and Vasquez are "employers" because FEPA's definition of the term includes "an agent of" an employer. (ECF No. 13 at 10.) But Title VII contains the same language, 42 U.S.C. § 2000e(b), and the Fourth Circuit has held that it is intended to make employers liable for their agents, but not to make those agents personally liable. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998). The Appellate Court of Maryland (then the Court of Special Appeals) reached the same conclusion under FEPA's "virtually identical" definition. *Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1225 (Md. Ct. Spec. App. 2005).

The Court does not find *Walters* or *Worthy* persuasive.[4] Neither decision addressed whether Title 20 gives a private plaintiff any cause of action for violations of § 20-801. Section 20-801 prohibits any "person" from aiding and abetting a "discriminatory act"—meaning an act prohibited elsewhere in Title 20, including employment discrimination. Md. Code Ann., State Gov't §§ 20-101(d), 20-801. But § 20-801 itself does not authorize a plaintiff to bring a civil action against those who aid and abet.[5]

Dass argues that § 20-1013 fills that gap, and that the Court should read § 20-1013 and § 20-801 as together "authoriz[ing] a civil action against any individual accused of aiding, abetting or otherwise participating in an unlawful employment practice." (ECF No. 13 at 10.) Not so. Section 20-1013 authorizes a complainant to sue only "the respondent alleging an unlawful employment practice," not the respondent alleging any discriminatory act. Md. Code Ann., State Gov't § 20-1013(a).[6] "Unlawful employment practice" is defined as "an act that is prohibited under § 20-606." *Id.* § 20-1001. In turn, § 20-606 prohibits only employers, employment agencies, and labor organizations from engaging in unlawful employment practices. *Id.* § 20-606(f).

[4] As unreported opinions from 2022, *Walters* and *Worthy* may not be cited in Maryland courts as precedent or as persuasive authority. See Md. Rule 1-104(a). Dass acknowledges that these decisions are not citable in Maryland courts but notes that federal courts are not bound by that rule when making an *Erie* prediction. (ECF No. 13 at 12 n.3.) True enough, but these decisions offer little statutory analysis to guide this Court's prediction. Moreover, their statements on individual liability were unnecessary to their judgments, which rested on the absence of any underlying FEPA violation. *See, e.g., Walters*, 2022 WL 17974610, at *16. Indeed, the parties do not cite, and the Court has not located, any reported decision finding an individual employee liable under § 20-801 for aiding and abetting an unlawful employment practice.

[5] Instead, a person "aggrieved by an alleged discriminatory act," like aiding and abetting under § 20-801, "may file a complaint with the [Maryland Commission on Civil Rights]." Md. Code Ann., State Gov't § 20-1004(a).

[6] The General Assembly made this limit explicit. When recodifying Title 20 in 2009, the revisors noted that the 2007 legislation "intended to create a private right of action in employment discrimination cases; however, as drafted, the law applies to all discriminatory acts," and recommended clarifying "that the provisions of this subtitle relating to civil actions elected or filed by complainants apply only to unlawful employment practices." Md. Code Ann., State Gov't § 20-1007 revisor's note. And the General Assembly did so. 2009 Md. Laws ch. 367 (H.B. 54).

Individual employees like Blethen and Vasquez cannot commit an unlawful employment practice, so § 20-1013 gives Dass no cause of action against them.

Accordingly, this Court "has recognized that there is no private right of action for 'aiding and abetting' a MFEPA claim." *Hurley*, 2026 WL 864078, at *10; *see also Chambers v. Sheppard Pratt Health Sys.*, Civ. No. SAG-24-02316, 2025 WL 1237358, at *7 (D. Md. Apr. 29, 2025) ("[T]o the extent [plaintiff] tries to allege that the Individual Defendants 'aided and abetted' the MFEPA violation, Defendants correctly note that there is no private right of action for such a claim."); *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 407 (D. Md. 2022) (dismissing a claim under § 20-801 because Title 20 provides no private right of action outside the employment and housing contexts).

This reading also accords with Maryland and federal appellate decisions holding that an "employer" under Title VII and FEPA does not encompass—and thus liability under either statute does not extend to—individual supervisors. *Lissau*, 159 F.3d at 180 (holding that "supervisors are not liable in their individual capacities for Title VII violations."); *Shabazz*, 881 A.2d at 1225, 1228 (finding Title VII's definition of "employer" "virtually identical" to its definition in FEPA's predecessor statute, recodified without substantive change into Title 20, and holding that it does "not permit imposition of personal liability for backpay on a supervisory employee").

Finally, Dass asks the Court to certify the question of individual aiding-and-abetting liability to the Supreme Court of Maryland. (ECF No. 13 at 12–13.) That court may answer a certified question if the answer may be determinative of an issue in the case and no controlling appellate decision, constitutional provision, or statute provides the answer. Md. Code Ann., Cts. & Jud. Proc. § 12-603. Because existing caselaw and statutes answer the question here,

certification is unnecessary. *See Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) ("Only if the available state law is clearly insufficient should the court certify the issue to the state court.").

Blethen and Vasquez cannot be held liable for directly committing or aiding and abetting Transdev's alleged FEPA violations and so Count III will be dismissed as to those defendants.

**C. Count IV: Wrongful Discharge**

Dass also alleges that Bonson and Vasquez wrongfully discharged him for refusing to approve Bonson's allegedly fraudulent invoice. (ECF No. 2 ¶¶ 117–27.) "[T]o establish wrongful discharge, the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002).

Defendants argue that Count IV must be dismissed because individual employees—like Bonson and Vasquez—may be personally liable for wrongful discharge only if they drove the decision to fire the plaintiff, which they claim Dass has not plausibly alleged. (ECF No. 8 at 10–12 (citing *Moniodis v. Cook*, 494 A.2d 212, 218–19 (Md. Ct. Spec. App. 1985)).) Dass disputes the degree of involvement required for individual liability. (ECF No. 13 at 13–14 (citing *Bleich v. Florence Crittenton Servs. of Balt., Inc.*, 632 A.2d 463, 474 (Md. Ct. Spec. App. 1993)).) The Court need not resolve that dispute because, under any standard, Dass must plausibly allege the third element of wrongful discharge: that each defendant's role in his discharge was connected to Dass's refusal to approve Bonson's invoice. He has not done so.

As described above, Dass alleges that he refused Bonson's invoice in December 2023, that Bonson later sent him an email containing an unspecified threat, and that Dass told Vasquez about the incident and his fear of retaliation. (ECF No. 2 ¶¶ 18–23, 35, 39–40.) These allegations fail to

plausibly connect either defendant's actions to Transdev's ultimate decision to fire Dass.

First, nothing in the Complaint suggests that Bonson, Transdev's National Director of Maintenance, had any authority over Dass's employment, participated in the decision to fire him, or communicated with those who did. And there is nothing more linking Dass's refusal to sign the invoice to his termination five months later. An unspecified threat, made by Bonson two months before a termination carried out by others, does not supply that link. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation and internal quotation marks omitted) (finding that the temporal proximity between "an employer's knowledge of protected activity and an adverse employment action" must be "very close" to support a causal connection between them).

Second, as to Vasquez, Dass alleges only that she knew of the invoice dispute with Bonson and of Dass's fear of retaliation, and that she eventually helped carry out Dass's termination. (ECF No. 2 ¶¶ 39–40, 53–54.) Those allegations are "merely consistent with" a theory that Vasquez helped fire Dass for refusing to approve the invoice, but "stop[] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Dass pleads no facts suggesting that Vasquez participated in retaliation over the invoice incident. She was not involved at the time Bonson supplied the invoice months earlier, and it is unclear what relationship she had, if any, to Bonson. (ECF No. 2 ¶¶ 18–23, 35.) That distinguishes this claim from Dass's § 1981 claim, where Vasquez allegedly acted alongside Blethen, the very target of Dass's protected activity, to fire Dass not long after he made his report. Nor does Dass allege any supporting facts to prove that Vasquez considered the invoice dispute or raised it with anyone else involved in the decision to fire him. (*See id.* ¶¶ 51–53.) Without more, Dass's assertion that he was fired for refusing to approve the invoice is a "mere conclusory statement[]" that cannot carry his burden. *Iqbal*, 556 U.S. at 678; *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

Dass has not "nudged [his] claims" that he was fired for failing to take part in Bonson's alleged invoice scheme "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Count IV will be dismissed as to defendants Bonson and Vasquez. Because Count IV is the only claim against Bonson, he will be dismissed from this action.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss Counts I, III, and IV of the Complaint (ECF No. 7) will be granted in part and denied in part. The Motion will be denied insofar as it seeks to dismiss Count I as to Blethen and Vasquez; granted insofar as it seeks to dismiss Count III as to Blethen and Vasquez; and granted insofar as it seeks to dismiss Count IV as to Bonson and Vasquez. Bonson will be dismissed from the case. A separate Order follows.

DATED this 12 day of November, 2026.

BY THE COURT:

James K. Bredar

James K. Bredar
United States District Judge

[7] To the extent that Dass's wrongful discharge claim in Count IV also rests on the public policy against race-based retaliation, it is independently precluded: "The purpose of the tort of [wrongful] discharge is to vindicate a public policy in the absence of any civil remedy." *Carson*, 187 F. Supp. 2d at 482–83. And Dass's Title VII, § 1981, and FEPA claims supply him with a remedy. *See id.*; *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 189 (Md. 1989).